| | |
|---|---|
| ROBERT THOMAS ONDILLA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 109-112 |
| ) | (Formerly CR 104-085) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Robert Thomas Ondilla, an inmate currently confined at the Federal Correctional Institution in Atlanta, Georgia, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion for an evidentiary hearing (doc. no. 2) and § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I.  BACKGROUND

On August 11, 2004, a federal grand jury indicted Petitioner for possession with intent to distribute approximately 41 grams of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1), and possession with intent to distribute 888 grams of marijuana, in violation of 21 U.S.C. § 841(a)(1). See United States v. Ondilla, CR 104-085, doc. no. 1 (S.D. Ga. Aug. 11, 2004) (hereinafter "CR 104-085"). Petitioner was then arrested in Costa

Rica and extradited to the United States to stand trial pursuant to an Extradition Treaty ("the Treaty") between Costa Rica and the United States, Law Number 7146, Extradition Law Number 4795, dated 16 July 1971.

Petitioner retained attorney Danny Durham to represent him (see CR 104-085, doc. nos. 5, 6), and pursuant to a negotiated plea agreement, Petitioner pled guilty to possession with intent to distribute approximately 41 grams of methamphetamine (actual) on October 20, 2006. Id., doc. nos. 27-29.[1] At the Rule 11 colloquy, Petitioner informed the Honorable Dudley H. Bowen, Jr., United States District Judge, that he had enough time to discuss and prepare for his case with Mr. Durham. Id., doc. no. 43, p. 6 (hereinafter "Rule 11 Tr."). Furthermore, Petitioner informed Judge Bowen that he was entirely satisfied with Mr. Durham's preparation and his handling of Petitioner's case. Id. at 7.

Judge Bowen then proceeded to advise Petitioner of the charges in the Indictment to which he was pleading guilty and also to address the maximum statutory penalty that might be imposed in the event of Petitioner's conviction. When asked if he understood the charge and the maximum penalty that might be imposed – a prison term of not less than five years and not more than forty years, not more than a $2,000,000 fine, at least four years of supervised release, and a $100 special assessment – Petitioner responded, "Yes." Id. at 10. Following this, Judge Bowen summarized the substance of Petitioner's plea agreement as follows:

---

[1] In exchange for Petitioner's guilty plea, the government agreed to dismiss Count Two of the Indictment and not to object to a recommendation from the Probation Office that Petitioner receive up to a 2-level reduction for acceptance of responsibility under the U.S. Sentencing Guidelines. CR 104-085, doc. no. 29, pp. 1-2.

> You have agreed to waive any right to appeal any sentence if the sentence is imposed is within the statutory maximum. You have agreed to waive any right to appeal or make any collateral or post-conviction attack or habeas corpus attack. . . . If the sentence exceeds the guideline range then [Petitioner] gets his right to appeal back, but not any habeas corpus right back.

Id. at 12-13. Judge Bowen further stated:

> What I want you to understand, Mr. Ondilla . . . [y]ou agree to waive any appeal if your [sentence] is within the guidelines and you have agreed to waive any collateral attack or any habeas corpus. So I don't want you to leave here thinking that later, on [you] can file a § 2255 or a § 2254 or something like that.[2] This is it; do you understand what I mean?

---

[2] A lengthy discussion was had on whether Petitioner was stipulating to being charged with possessing 60.2 grams of methamphetamine mixture or 41.5 grams of pure methamphetamine. Rule 11 Tr., pp. 7-18. In conclusion to that discussion, the following occurred:

| | |
|---|---|
| Judge Bowen: | Okay, all of that is well and good, but I've got a man who says I am pleading guilty to one thing and they are trying to change it. And then we have a stipulation in here that says it was 41.5 grams of pure methamphetamine. Is that what you are stipulating to, or not, Mr. Ondilla? |
| Petitioner: | Excuse me, sir? |
| Judge Bowen: | Are you stipulating as it is stated in the plea agreement that it was 41.5 grams of pure methamphetamine or not? |
| Petitioner: | I guess I am. |
| Judge Bowen: | I don't go guilty pleas on guess work, I do them on facts. |
| Petitioner: | Yes, I will plead guilty to that. |

Id. at 18.

3

Id. at 18-19. Petitioner responded, "Yes, sir. I plead guilty[,] I got no chance of winning." Id. at 19. Judge Bowen then asked Petitioner if the summary was in accordance with Petitioner's understanding of the plea agreement, and Petitioner responded, "Yes, sir." Id. at 20.

Patrick Clayton, a Special Agent with the Drug Enforcement Administration, then testified to the factual basis for Petitioner's guilty plea. Id. at 21-36. In response, Petitioner expressed some issues he had concerning his cooperation with law enforcement after his arrest; however, with respect to the events of December 11th through the 12th of 2003, when he was arrested, he stated no objection to Special Agent Clayton's testimony. Therefore, Judge Bowen accepted Petitioner's plea of guilty, which was duly entered. Id. at 37; see also CR 104-085, doc. no. 28.

The Probation Officer then prepared a Presentence Investigation Report ("PSI"). Based on Petitioner's prior conviction for two residential burglaries (PSI ¶¶ 29, 30) Petitioner was classified as a career offender pursuant to USSG § 4B1.1. (PSI ¶ 19). At the sentencing hearing on January 6, 2006, Petitioner received a 2 level reduction for acceptance of responsibility under USSG § 3E1.1. He was re-sentenced on August 20, 2007, and received the additional third level reduction pursuant to USSG § 3E.1, which resulted in a total offense level of 31, and an automatic criminal history category of VI; since Petitioner is a career offender, the sentencing range called for 188 - 235 months. He received a sentence of 204 months of imprisonment.

Following an unsuccessful appeal, see United States v. Ondilla, 271 Fed. App'x 863

4

(11th Cir. 2008) (*per curiam*),[3] Petitioner filed the instant § 2255 motion, in which he asserts the following claims for relief:

(1) His plea agreement was invalid because:

    (A) the collateral attack waiver in the plea agreement was invalid because Judge Bowen failed to ensure that Petitioner fully understood the significance of the rights he relinquished;

    (B) he was unaware of the direct consequence of his guilty plea, specifically that he would be sentenced as a career offender; and

    (C) he entered the guilty plea without the advice of competent counsel because his trial attorney failed to explain the consequence of the waivers and failed to object that his sentence violated the Treaty.

(2) His trial counsel was ineffective because:

    (A) counsel failed to investigate and object to the use of Petitioner's status as a career offender because such use was prohibited by the Treaty;

    (B) counsel failed to object that Petitioner's criminal history score was precluded by the Treaty;

    (C) counsel failed to object that Petitioner's sentence was unreasonable because it was based on facts prohibited by the Treaty;

    (D) counsel failed to seek a downward departure from the career offender guidelines;

and that all of these failures prejudiced him by resulting in an incorrect sentence.

---

[3]In his appeal Petitioner raised: (1) whether the application of USSG § 4B1.1 (career offender) to the defendant to determine his sentencing guidelines range was error; and (2) whether the Treaty between Costa Rica and the United States barred the District Court from using Petitioner's career offender status in determining his sentencing guideline range. (Doc. no. 4, pp. 3, 16-18).

5

(3) His counsel, on appeal, was ineffective because he failed to assert certain constitutional claims derived from purported violations of the Treaty between the United States and Costa Rica in his direct appeal because:

    (A) his plea was in violation of the Treaty which required Petitioner only be tried for the crime for which he was indicted;

    (B) his career offender treatment violated the Treaty;

    (C) consideration of Petitioner's prior convictions in fashioning a sentence violated the Treaty; and

    (D) his sentence was unreasonable because it violated the Treaty.

(4) His sentence is unconstitutional because it is based on invalid state convictions.[4]

(See generally doc. no. 1; doc. no. 2). Petitioner also requests an evidentiary hearing to resolve these matters. (Doc. no. 2). Respondent submits that Petitioner's claims are either barred by his appeal waiver or otherwise without merit. (See generally doc. no. 4). The Court resolves the matter as follows.

## II. DISCUSSION

### A. No Need For Evidentiary Hearing

In regard to Petitioner's request for an evidentiary hearing, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court

---

[4]Notably Petitioner concedes that no state court has invalidated either of his prior convictions. (Doc. no. 2, pp. 15-17).

6

to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are barred from review or otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing (doc. no. 2) should be denied.

### B. Effect Of Waiver Contained In The Plea Agreement

#### 1. Knowing And Voluntary Nature Of Waiver

Petitioner claims in his § 2255 motion that he did not knowingly and voluntarily waive his appeal rights because neither counsel nor the Court explained its significance to him. It is well-settled that a waiver of appeal[5] provision is enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from

---

[5]By "appeal," the Court here refers to the right to "appeal or contest, directly or collaterally, [a] sentence." United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993). Moreover, case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. Id.; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

7

the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333.

Thus, if the government meets the burden in the instant case, Petitioner's claims stated in Grounds 1A and B and Ground 2 are barred from review. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner fully set forth that, as a condition of his guilty plea, he was waiving any right to collateral attack of his sentence or the knowing and voluntary nature of his guilty plea. See CR 104-085, doc. no. 29, pp. 2-3 ("The defendant . . . expressly waives any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea . . . ."). Judge Bowen thoroughly went over Petitioner's plea agreement and specifically reviewed the waiver provisions at the Rule 11 colloquy. After Judge Bowen concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Bowen. Rule 11 Tr., p. 20.

Thus, the record before the Court demonstrates that the appeal waiver was knowing and voluntary. While Petitioner would have the Court ignore his responses to Judge Bowen's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the Court concludes that

the appeal waiver is valid and that Petitioner's claims stated in Grounds 1A and B and Ground 2 described above, are barred from review. Of course, the Court is aware that Petitioner has also challenged the assistance of counsel in entering into the plea agreement, a claim which, if found to have merit, would cast doubt on whether Petitioner validly waived his right to collateral attack of his sentence. However, as discussed below, the Court determines that this claim lacks merit, thus supporting the conclusion that Petitioner validly waived his right to a collateral post-conviction attack of his sentence.

2. **Ineffective Assistance Of Counsel Claim Not Barred By Waiver**

Notwithstanding the analysis above, Petitioner's claim of ineffective assistance of counsel, asserted in Ground 1C is not precluded by his appeal waiver, as "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005); see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As it appears that Petitioner is challenging his counsel's performance as it relates to the validity of his plea or waiver (inasmuch as he alleges that his guilty pleas is invalid because "same was entered unknowingly, involuntarily, unintelligently and without the advice of competent counsel" (doc. no. 1, p. 4)), Petitioner's claim is not barred by the provision in the plea agreement waiving his appeal rights.

That having been said, ineffective assistance of counsel claims are subject to the two-

part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" <u>Id.</u>; <u>see also</u> <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

In applying the <u>Strickland</u> components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Smith v. Wainwright</u>, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

In Ground 1C, Petitioner argues that his counsel failed to offer him advice and counsel about the consequences of a guilty plea and failed to object that his sentence violated the Treaty. However, the guilty plea transcripts confirm that Petitioner told Judge Bowen that he had had enough time to discuss the case and to prepare his case with his counsel. CR 104-085, Rule 11 Tr., p. 6. The guilty plea transcripts also confirm that Petitioner agreed that he was satisfied with his counsel's preparation and handling of the case. Id. In addition, Judge Bowen thoroughly reviewed the plea agreement, as well as the rights that would be

11

waived by a guilty plea. Id. at 7-20. Judge Bowen also specifically informed Petitioner about the penalty for the charge to which he was about to plead guilty. Id. at 10. Judge Bowen also verified that every promise made to Petitioner concerning his guilty plea had been included in the guilty plea.

Thus, prior to Petitioner entering his guilty plea, he was specifically told about the information that Petitioner now claims his counsel failed to convey, and Judge Bowen confirmed that Petitioner, having all of this information in mind, wanted to proceed with his guilty plea. Indeed, Petitioner responded to Judge Bowen, "Yes, sir. I plead guilty I got no chance of winning." Rule 11 Tr., p. 19. Moreover, Petitioner also attested with his signature to the plea agreement that he understood the charges and penalties, that with the advice of counsel he had weighed the relative benefits of a trial versus a guilty plea. Petitioner's belated, self-serving allegations about a lack of information simply do not ring true in light of the record evidence.

As previously noted, "[s]olemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Furthermore, even if counsel failed to adequately explain the plea agreement to Petitioner, the Court did so, and again, no prejudice inured to Petitioner. In sum, Petitioner has not established that he was prejudiced in any way by his counsel's performance, and he is not entitled to relief on these claim.

### C. Remaining Claims

#### 1. Issues Raised In Ground 3 Were Rejected On Direct Appeal And May Not Be Reconsidered

Petitioner raised the issues which now form the basis for his ineffective assistance of counsel issues asserted in Ground 3 of his § 2255 motion on direct appeal. (Doc. no. 4, pp. 16-18). Claims that are raised and rejected on direct appeal are generally precluded from reconsideration in a § 2255 motion. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills, 36 F.3d at 1056; Edwards v. United States, 795 F.2d 958, 961 (11th Cir. 1986); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (*per curiam*). As the Seventh Circuit noted, "[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004). Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal.[6] Nyhuis, 211 F.3d at 1343. Thus, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

Here, Petitioner argues that his counsel, on appeal, was ineffective for failing to assert constitutional claims regarding purported violations of the Treaty. Although Petitioner couches these arguments as ineffective assistance of counsel claims, it is clear that these

---

[6]Stated another way, simply putting a new name on an old issue will not suffice.

arguments are, respectively, an attempt to relitigate his claims that the district court erred in determining Petitioner's criminal history score and whether there was a violation of the Treaty. After Petitioner raised these arguments on appeal, the Eleventh Circuit summarily affirmed Petitioner's conviction and sentence. Ondilla, 271 Fed. App'x at 863. Thus, Petitioner is barred from raising his claims asserted in Ground 3 again.

### 2. Petitioner Is Not Entitled To Relief For Ground 4

In this Ground, Petitioner asserts that his sentence is unconstitutional because it is based on invalid state convictions. Petitioner maintains that he has filed an application for a writ of habeas corpus in state court. (Doc. no. 2, pp. 15-16). However, notably Petitioner also concedes that the state habeas corpus petition is still pending and that no state court has invalidated either of his prior convictions that were used in calculating his federal sentence. (Id. at 15-17). In the Eleventh Circuit:

> [P]ursuant to federal habeas corpus, a district court may reopen and reduce a federal sentence, once a federal defendant has, in state court, successfully attacked a prior state conviction, previously used in enhancing the federal sentence.

Untied States v. Walker, 198 F.3d 811, 815 (11th Cir. 1999) (citations omitted). As Petitioner acknowledges that neither state conviction has been overturned, he is not entitled to the relief sought in Ground 4.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion for an evidentiary hearing (doc. no. 2) and § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of

Respondent.

SO REPORTED and RECOMMENDED this 29th day of January, 2010, at Augusta, Georgia.

*/s/ W. Leon Barfield*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE